UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRUCE DEL TURCO, VINCENT DELAZZERO, THOMAS LANE and JAMES BARTALONE, as Trustees and Fiduciaries of the TILE LAYERS LOCAL UNION 52 PENSION, INSURANCE AND WELFARE, AND ANNUITY FUNDS, CHARLES HILL, EDWARD GAHN, SCOTT ERATH and VINCENT ANASTASI, as Trustees and Fiduciaries of the TILE HELPERS LOCAL 88 WELFARE, ANNUITY AND VACATION FUNDS, JOHN J. FLYNN, LOUIS WEIR, DOMINIC SPANO, KENNETH LAMBERT, JAMES BOLAND, GERALD O'MALLEY, JOSEPH BRAMLETT, FRED KINATEDER, PAUL SONGER, CHARLES VELARDO, EUGENE GEORGE, MATTHEW AQUILINE, DAN SCHIFFER, GREGORY HESS and VINCENT DELAZZERO as Trustees and Fiduciaries of the BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION, HEALTH AND ANNUITY FUNDS and CHARLES HILL, as President of TILE, MARBLE & TERRAZZO LOCAL NO. 7 OF N.Y. & N.J., BAC, <br><br>                                           Plaintiffs, <br><br>                      -against- <br><br> NAVILLUS TILE, INC., JOHN DOE BONDING COMPANIES 1 THROUGH 3 and KEVIN O'SULLIVAN, <br><br>                                           Defendants. | 05 Civ. 569 (ARR) <br><br><br> **FIRST AMENDED COMPLAINT** |

Plaintiffs, by and through their attorneys, Barnes, Iaccarino, Virginia, Ambinder & Shepherd, PLLC, as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

1.      This is a civil action brought pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended, 29 U.S.C. §§ 1132(a)(3), 1145 ("ERISA"), and section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185 ("Taft-Hartley Act"), by multi-employer, welfare, pension and annuity benefit funds through their respective Boards of Trustees, and by a union through its President, for injunctive and other equitable relief under ERISA and for breach of contract to secure performance by an employer of specific statutory and contractual obligations to pay and/or submit the required monetary contributions and/or reports to the Funds and remit dues checkoffs and other contributions deducted from the wages paid to employees who authorize said deductions in writing to the union and to permit and cooperate in the conduct of audits of the books and records of defendants.  This Complaint alleges that by failing, refusing or neglecting to pay and submit the required monetary contributions and reports to the Funds and to remit dues checkoffs and other contributions to the union when due, defendants violated their collective bargaining agreements with the union and the respective trust agreements with the funds, as well as committed violations of ERISA.

## JURISDICTION

2.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 185 and 29 U.S.C. § 1132(e)(1).  Venue is proper in this district pursuant to 28 U.S.C. § 1132(e)(2) and 29 U.S.C. § 185(a).

## THE PARTIES

3.      Plaintiffs Bruce Del Turco, Vincent Delazzero, James Bartalone and Thomas Lane are the employer and employee trustees (hereinafter the "Local 52 Trustees") of the Tile Layers Local Union 52 Pension, Insurance and Welfare, Annuity and Vacation Funds (the "Local 52 Benefit Funds").  The Local 52 Benefit Funds are multi-employer, labor-management trust funds, organized and operated pursuant to various collective bargaining agreements in accordance with section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5).  The Local 52 Benefit Funds are employee benefit plans within the meaning of sections 3(2), 3(3) and 502(d)(1) of ERISA, 29 U.S.C. §§ 1002(37) and 1145.  The Local 52 Benefit Funds maintain their principal place of business at 45-34 Court Square, Long Island City, New York 11101.

4.      Plaintiffs Charles Hill, Edward Gahn, Scott Erath and Vincent Anastasi are the employer and employee representatives and the trustees (hereinafter the "Local 88 Trustees") of the Tile Helpers Local 88 Welfare, Annuity and Vacation Funds (the "Local 88 Benefit Funds").  The Local 88 Benefit Funds are multi-employer, employee benefit trust funds, organized and operated in accordance with the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA").  The Local 88 Benefit Funds maintain their principal place of business at 45-34 Court Square, Long Island City, New York 11101.

5.      Plaintiffs John J. Flynn, Louis Weir, Dominic Spano, Kenneth Lambert, James Boland, Gerald O'Malley, Joseph Bramlett, Fred Kinateder, Paul Songer, Charles Velardo, Eugene George, Matthew Aquiline, Dan Schiffer, Gregory Hess and Vincent Delazzero are the employer and employee representatives and the trustees (hereinafter

the "International Trustees") of the Bricklayers & Trowel Trades International Pension, Health and Annuity Funds (the "International Benefit Funds").  The International Benefit Funds are multi-employer labor-management trust funds, organized and operated pursuant to various collective bargaining agreements in accordance with section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5).  The International Benefit Funds are employee benefit plans within the meaning of sections 3(2), 3(3) and 502(d)(1) of ERISA, 29 U.S.C. §§ 1002(37) and 1145.  The International Benefit Funds maintain their principal place of business at 1776 Eye Street, NW, Washington, D.C. 20006.

6.    Plaintiff Charles Hill is the President of Tile, Marble & Terrazzo Local No. 7 of N.Y. & N.J., BAC (the "Union"), and brings this action for dues checkoffs and other contributions in his representative capacity pursuant to section 12 of the General Associations Law of the State of New York.  The Union is a labor organization within the meaning of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in Section 502 thereof, 29 U.S.C. § 142, and section 3(4) of ERISA, 29 U.S.C. § 1002(4).  The Union maintains its principal place of business at 45-34 Court Square, Long Island City, New York 11101.

7.    Upon information and belief, at all times relevant hereto, defendant Navillus Tile, Inc. ("Navillus") was and is a corporation doing business in the State of New York as an employer within the meaning of sections 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) and 1145, and was and is an employer in an industry affecting commerce within the meaning of section 301 of the Taft-Hartley Act, 29 U.S.C. § 185 and performed work at numerous projects, including DeKalb Avenue Subway Station,

Grand Central Station, Staten Island Ferry terminal at Whitehall, Bloomingdale's at Lexington Avenue and 59th Street, and the H&M Clothing Store in the Bloomberg building.

8.     Upon information and belief, at all times relevant hereto, defendant Kevin O'Sullivan is and has been Vice President of Navillus.  Upon further information and belief, at all times relevant hereto, Kevin O'Sullivan is and has been vested with authority and control over the payment and/or submission of the required monetary contributions and/or reports to the plaintiff funds and remittance of dues checkoffs and other contributions deducted from the wages paid to employees who authorize said deductions in writing, owed by Navillus under the terms of the collective bargaining agreements between the Union and Navillus.  Defendant Kevin O'Sullivan is sued in this action in his individual capacity and his official capacity as Vice President of Navillus.

9.     Upon information and belief, at all times relevant hereto, defendants John Doe Bonding Companies 1 through 3 are and have been engaged in the surety bonding business, authorized to issue surety bonds in the State of New York and furnished labor and material bonds in connection with numerous public works projects, including but not limited to DeKalb Avenue Subway Station and Staten Island Ferry Terminal at Whitehall ("Public Works Projects"), in which defendant Navillus performed work.

## BACKGROUND

10.     The Plaintiff Funds collectively provide welfare, pension and annuity benefits to members of the Union.

11.     At all relevant times hereto, Navillus was bound to a collective bargaining agreement with the Union (the "Setters Agreement"), pursuant to the terms of which

-5-

Navillus was obligated to pay specified wages to all tile setters, as well as benefit contributions to the Local 52 Benefit Funds and the International Benefit Funds, for all work performed by Navillus' tile setters.

12.     At all relevant times hereto, Navillus was bound to a separate collective bargaining agreement with the Union (the "Helpers Agreement"), pursuant to the terms of which Navillus was obligated to pay specified wages to its tile helpers, as well as benefit contributions to the Local 88 Benefit Funds and the International Benefit Funds, for all work performed by Navillus' tile helpers within New York.

13.     Article XXVII of the Setters Agreement provides, *inter alia*, that

> The person signing on behalf of the Employer hereby acknowledges by his signature receipt of copies of the Agreements and Declarations of Trust of the Tile Layers Union Pension Fund, Insurance Fund, Welfare Fund and Annuity Fund, also agrees to be personally bound by and to assume all obligations to the Employer provided for in this Trade Agreement and he warrants and represents that he has authority to bind the Employer and the principals or members thereof.

14.     Article III, Section 3(M) of the Setters Agreement provides, *inter alia*, that

> The President, Vice President, Secretary-Treasurer, individual partner, employee of the partnership, officer, stockholder, proprietor or employee of the corporation, company, joint venture or proprietorship of the Employer acknowledges that he or she is vested with the authority and control over the submission of reports and/or payment of contributions to the Funds and acknowledges that he or she shall be personally and individually obligated to submit the required reports and/or pay the required contributions to the Funds for all work performed by Tile Layers.

15.     Kevin O'Sullivan executed on behalf of Navillus and himself individually the Setters Agreement whereby, *inter alia*, he became obligated to pay and/or submit the required monetary contributions and/or reports to the plaintiff Local 52 Benefit Funds

and the International Benefit Funds and to remit dues checkoffs and other contributions deducted from the wages paid to Navillus' tile setters, for all tile setting work performed by Navillus' employees within the geographical jurisdiction of the Union.

16.     Upon information and belief, Navillus has not fulfilled its statutory and contractual obligations to pay and/or submit the required monetary contributions and/or reports to the Funds and remit dues checkoffs and other contributions deducted from the wages paid to employees who perform work covered by the Setters Agreement and/or the Helpers Agreement.

17.     Article II-A, Section 3 of the Setters Agreement provides, *inter alia*, that

> The Employer, whether as an individual, partner or employee of a partnership, or as an officer, director, stockholder or employee of a corporation, agrees to remain bound by the terms and conditions of this Agreement, although doing business as an individual under another trade name, or as a partner or employee of another partnership, or as an officer, director, stockholder or employee of another corporation, or as a joint venturer.

18.     Article II-A, Section 4 of the Setters Agreement provides, *inter alia*, that

> In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercise either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

19.     Article III, Section 3(H) of the Setters Agreement provides, *inter alia*, that

The books and records of the Employer shall be made available at all reasonable times for inspection and audit by, but not limited to, the accountant, outside independent auditors or other representatives of the Trustees of Pension, Welfare, and Annuity Funds. The Employer shall be required to disclose upon such audits all payrolls and payroll ledgers including office payrolls, yard payrolls, New York payrolls, New Jersey payrolls, Connecticut payrolls, computer payroll printouts, W2 forms, Quarterly Federal Payroll Tax Returns (Form 941), Quarterly State Payroll Tax Returns (Forms WRS-2 and WRS-30), annual Federal and State Tax Returns, Cash Disbursements, Journals, Purchase Journals, New York State Employment Records, Insurance Company Reports, Employer Remittance Reports, Payroll and Supporting Checks, Ledgers, Vouchers, 1099 Forms, evidence of Unemployment Insurance Contributions, Payroll Tax Deductions, Disability Insurance Premiums, Certification of Workers Compensation Coverage, checks in support hereof and any other documentation concerning payrolls. In addition, the aforementioned books and records of any Affiliate, Subsidiary, Alter Ego, Joint Venture or other related company of the Employer shall also be made available at all reasonable times for inspection and audit by, not limited to, the Accountants, Outside Independent Auditors or other representatives of the Trustees of the Funds.

20.     Article III, Section 3(I) provides, *inter alia*, that

The Employer shall retain, for a minimum period of six (6) years, payroll and related records necessary for the conduct of a proper audit in order that a designated representative of the Trustees may make periodic review to confirm that contributions owed pursuant to this Agreement are paid in full.

## FIRST CLAIM FOR RELIEF

21.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 20 hereof.

22.     As a result of tile setting work performed by individual employees of defendant Navillus, on all projects undertaken from January 1999 to the present,

including DeKalb Avenue Subway Station, Grand Central Station, Staten Island Ferry terminal at Whitehall, Bloomingdale's at Lexington Avenue and 59th Street, and the H&M Clothing Store in the Bloomberg building, pursuant to the Setters Agreement, there is due and owing to the Local 52 Benefit Funds from defendant Navillus fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for the period January 1999 through the present.

23.     No part of the fringe benefit contributions contractually due the Local 52 Benefit Funds has been paid by defendant Navillus, and the Local 52 Benefit Funds have been damaged in an unknown amount.

24.     Navillus' failure to make the required contributions to the Local 52 Benefit Funds constitutes a violation of the Setters Agreement.

25.     Accordingly, defendant Navillus is liable to the Local 52 Benefit Funds as and for fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for the period January 1999 through the present, plus interest, attorneys' fees and liquidated damages thereon.

## SECOND CLAIM FOR RELIEF

26.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 25 hereof.

27.     As a result of tile helpers work performed by individual employees of defendant Navillus, on all projects undertaken from 1999 to the present, including DeKalb Avenue Subway Station, Grand Central Station, Staten Island Ferry terminal at Whitehall, Bloomingdale's at Lexington Avenue and 59th Street, and the H&M Clothing Store in the Bloomberg building. pursuant to the Helpers Agreement, there became due

and owing to the Local 88 Benefit Funds from defendant Navillus fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for the period January 1999 through the present.

28.     No part of the fringe benefit contributions contractually due the Local 88 Benefit Funds has been paid by defendant Navillus, and the Local 88 Benefit Funds have been damaged in an unknown amount.

29.     Navillus' failure to make the required contributions to the Local 88 Benefit Funds constitutes a violation of the Helpers Agreement.

30.     Accordingly, defendant Navillus is liable to the Local 88 Benefit Funds as and for fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for the period January 1999 through the present, plus interest, attorneys' fees and liquidated damages.

### THIRD CLAIM FOR RELIEF

31.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 30 hereof.

32.     As a result of tile work performed by individual employees of defendant Navillus, on all projects undertaken from 1999 to the present, including DeKalb Avenue Subway Station, Grand Central Station, Staten Island Ferry terminal at Whitehall, Bloomingdale's at Lexington Avenue and 59th Street, and the H&M Clothing Store in the Bloomberg building.  pursuant to the Setters Agreement and the Helpers Agreement and the trust documents incorporated by reference therein, there became due and owing to the International Benefit Funds from defendant Navillus fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for the period January

1999 through the present, plus interest at the rate of fifteen percent per annum and liquidated damages calculated at the rate of twenty percent.

33.     No part of the fringe benefit contributions contractually due the International Benefit Funds has been paid by defendant Navillus, and the International Benefit Funds have been damaged in an unknown amount as and for fringe benefit contributions for the period January 1999 through the present, plus interest at the rate of fifteen percent per annum, liquidated damages calculated at the rate of twenty percent and attorneys' fees.

34.     Navillus' failure to make the required contributions to the International Benefit Funds constitutes a violation of the Setters Agreement and the Helpers Agreement.

35.     Accordingly, defendant Navillus is liable to the International Benefit Funds as and for fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for the period January 1999 through the present, plus interest at the rate of fifteen percent per annum, liquidated damages calculated at the rate of twenty percent and attorneys' fees.

## FOURTH CLAIM FOR RELIEF

36.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 35 hereof.

37.     By its terms, the Setters Agreement, *inter alia*, personally bound defendant Kevin O'Sullivan to assume all obligations of Navillus under the Setters Agreement.

38.     Defendant Kevin O'Sullivan is obligated, pursuant to the Setters Agreement, to pay the Local 52 Benefit Funds fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for tile setting work performed by defendant Navillus for the period January 1999 through the present.

39.     No part of the fringe benefit contributions contractually due the Local 52 Benefit Funds from defendant Navillus has been paid by defendant Kevin O'Sullivan.

40.     Accordingly, defendant Kevin O'Sullivan is personally liable to the Local 52 Benefit Funds as and for fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for the period January 1999 through the present, plus interest, attorneys' fees and liquidated damages.

## FIFTH CLAIM FOR RELIEF

41.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 40 hereof.

42.     By its terms, the Setters Agreement, *inter alia*, personally bound defendant Kevin O'Sullivan to assume all obligations of defendant Navillus under the Setters Agreement.

43.     Defendant Kevin O'Sullivan is obligated, pursuant to the Setters Agreement, to pay the International Benefit Funds fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for tile setting work performed by defendant Navillus for the period January 1999 through the present.

44.     No part of the fringe benefit contributions contractually due the International Benefit Funds from defendant Navillus has been paid by defendant Kevin O'Sullivan.

45.     Accordingly, defendant Kevin O'Sullivan is personally liable to the International Benefit Funds for tile work performed by defendant Navillus as and for fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for the period January 1999 through the present, plus interest, attorneys' fees and liquidated damages.

### SIXTH CLAIM FOR RELIEF

46.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 45 hereof.

47.     Section 515 of ERISA (29 U.S.C. § 1145) requires employers to pay fringe benefit contributions in accordance with the terms and conditions of collective bargaining agreements.

48.     Upon information and belief, defendant Navillus, by the terms of the Setters Agreement, failed to pay and submit the required monetary contributions and reports to the Local 52 Benefit Funds due as a result of tile setting work performed by individual employees of defendant Navillus.  Such failure to make payment and submit reports constitutes a violation of section 515 of ERISA (29 U.S.C. § 1145).

49.     Section 502 of ERISA (29 U.S.C. § 1132) provides that, upon a finding of an employer violation of section 515 of ERISA (29 U.S.C. § 1145), the Court shall award to a plaintiff fund the unpaid fringe benefit contributions, plus statutory damages and interest on the unpaid principal both computed at the rate provided for under the plaintiff fund's plan or, if none, as set forth in the United States Internal Revenue Code (26 U.S.C. § 6621), together with reasonable attorneys' fees and costs and disbursements incurred in the action.

50.     Accordingly, defendant Navillus is liable to the Local 52 Benefit Funds for the payment and submission of the required monetary contributions and reports to the Local 52 Benefit Funds as aforesaid, and is liable for the additional amount of said statutory damages, together with reasonable attorneys' fees, interest on the unpaid principal, costs and disbursements incurred in this action, pursuant to section 502 of ERISA (29 U.S.C. § 1132).

## SEVENTH CLAIM FOR RELIEF

51.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 50 hereof.

52.     Section 515 of ERISA (29 U.S.C. § 1145) requires employers to pay fringe benefit contributions in accordance with the terms and conditions of collective bargaining agreements.

53.     Upon information and belief, at all times material hereto, defendant Navillus, by the terms of the Helpers Agreement, failed to pay and submit the required monetary contributions and reports to the Local 88 Benefit Funds due as a result of tile helpers work performed by individual employees of defendant Navillus.  Such failure to make payment and submit reports constitutes a violation of section 515 of ERISA (29 U.S.C. § 1145).

54.     Section 502 of ERISA (29 U.S.C. § 1132) provides that, upon a finding of an employer violation of section 515 of ERISA (29 U.S.C. § 1145), the Court shall award to a plaintiff fund the unpaid fringe benefit contributions, plus statutory damages and interest on the unpaid principal both computed at the rate provided for under the plaintiff fund's plan or, if none, as set forth in the United States Internal Revenue Code (26 U.S.C.

§ 6621), together with reasonable attorneys' fees and costs and disbursements incurred in the action.

55.   Accordingly, defendant Navillus is liable to the Local 88 Benefit Funds for the payment and submission of the required monetary contributions and reports to the Local 88 Benefit Funds as aforesaid, and is liable for the additional amount of said statutory damages, together with reasonable attorneys' fees, interest on the unpaid principal, costs and disbursements incurred in this action, pursuant to section 502 of ERISA (29 U.S.C. § 1132).

## EIGHTH CLAIM FOR RELIEF

56.   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 55 hereof.

57.   Section 515 of ERISA (29 U.S.C. § 1145) requires employers to pay fringe benefit contributions in accordance with the terms and conditions of collective bargaining agreements.

58.   Upon information and belief, at all times material hereto, defendant Navillus, by the terms of the Setters Agreement and the Helpers Agreement, failed to pay and submit the required monetary contributions and reports to the International Benefit Funds due as a result of work performed by individual employees of defendant Navillus. Such failure to make payment and submit reports constitutes a violation of section 515 of ERISA (29 U.S.C. § 1145).

59.   Section 502 of ERISA (29 U.S.C. § 1132) provides that, upon a finding of an employer violation of section 515 of ERISA (29 U.S.C. § 1145), the Court shall award to a plaintiff fund the unpaid fringe benefit contributions, plus statutory damages and

interest on the unpaid principal both computed at the rate provided for under the plaintiff

fund's plan or, if none, as set forth in the United States Internal Revenue Code (26 U.S.C.

§ 6621), together with reasonable attorneys' fees and costs and disbursements incurred in

the action.

60.     Accordingly, defendant Navillus is liable to the International Benefit

Funds for the payment and submission of the required monetary contributions and reports

to the International Benefit Funds as aforesaid, and is liable for the additional amount of

said statutory damages, together with reasonable attorneys' fees, interest on the unpaid

principal, costs and disbursements incurred in this action, pursuant to section 502 of

ERISA (29 U.S.C. § 1132).

## NINTH CLAIM FOR RELIEF

61.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1

through 60 hereof.

62.     Pursuant to the terms and conditions of the Setters Agreement, defendant

Navillus is required, *inter alia*, to file certain employer contribution reports with the

Local 52 Benefit Funds, and is further required to permit and cooperate with the Local 52

Benefit Funds and their designated representatives in the conduct of audits of Navillus'

books and records for the period January 1999 through the present, including, but not

limited to, all payroll sheets, daily time records, job location records, cash disbursement

journals, State tax forms WRS-2, WT4A and 4B (NY), WR#30 (NJ), Federal tax forms

W2, W3, 940, 941, 1099, 1096, 1120s/1120S and 1040 Schedule C, New York State

Employment Reports, Insurance Company Reports and supporting checks, general

ledgers, ledgers, vouchers, verification of work outside of the geographical jurisdiction of

the Union, evidence of unemployment insurance contributions, payroll tax deductions, disability insurance premiums, certification of workers compensation coverage, and any other items concerning payroll(s), as well as the same records of any affiliate, subsidiary, alter ego, joint venture or other related company of the Employer doing bargaining unit work, for the purpose of ascertaining the amount of fringe benefit contributions due the Local 52 Benefit Funds from defendant Navillus, and verifying the accuracy of the employer contribution reports filed by defendant Navillus.

63. Accordingly, pursuant to the terms and conditions of the Setters Agreement, the Local 52 Benefit Funds demand an order directing defendant Navillus to permit and cooperate with the Local 52 Benefit Funds and their designated representatives in the conduct of an audit of Navillus' books and records for the period January 1999 through the present.

## TENTH CLAIM FOR RELIEF

64. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 63 hereof.

65. Pursuant to the terms and conditions of the Helpers Agreement, defendant Navillus is required, *inter alia*, to file certain employer contribution reports with the Local 88 Benefit Funds, and is further required to permit and cooperate with the Local 88 Benefit Funds and their designated representatives in the conduct of audits of defendant Navillus' books and records for the period January 1999 through the present for the purpose of ascertaining the amount of fringe benefit contributions due the Local 88 Benefit Funds from defendant Navillus, and verifying the accuracy of the employer contribution reports filed by defendant Navillus.

66.     Accordingly, pursuant to the terms and conditions of the Helpers Agreement, the Local 88 Benefit Funds demand an order directing defendant Navillus to permit and cooperate with the Local 88 Benefit Funds and their designated representatives in the conduct of an audit of Navillus' books and records for the period January 1999 through the present.

### ELEVENTH CLAIM FOR RELIEF

67.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 66 hereof.

68.     Pursuant to the terms and conditions of the Setters Agreement and the Helpers Agreement, and the trust documents incorporated by reference therein, defendant Navillus is required, *inter alia*, to file certain employer contribution reports with the International Benefit Funds, and is further required to permit and cooperate with the International Benefit Funds and their designated representatives in the conduct of audits of defendant Navillus' books and records for the period January 1999 through the present for the purpose of ascertaining the amount of fringe benefit contributions due the International Benefit Funds from defendant Navillus, and verifying the accuracy of the employer contribution reports filed by defendant Navillus.

69.     Accordingly, pursuant to the terms and conditions of the Setters Agreement and the Helpers Agreement, and the trust documents incorporated by reference therein, the International Benefit Funds demand an order directing defendant Navillus to permit and cooperate with the International Benefit Funds and their designated representatives in the conduct of an audit of Navillus' books and records for the period January 1999 through the present.

## TWELFTH CLAIM FOR RELIEF

70.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 69 hereof.

71.    By its terms, the Setters Agreement, *inter alia*, personally bound defendant Kevin O'Sullivan to assume all obligations of defendant Navillus.

72.    Defendant Kevin O'Sullivan is obligated, pursuant to the terms of the Setters Agreement, to permit and cooperate in the conduct of audit of the books and records of defendant Navillus as aforesaid.

73.    Upon information and belief, defendant Kevin O'Sullivan has failed to permit and/or cooperate in the conduct of an audit of books and records of defendant Navillus.

74.    Accordingly, pursuant to the terms and conditions of the Setters Agreement, the Local 52 Benefit Funds demand an order directing defendant Kevin O'Sullivan to permit and cooperate with the Local 52 Benefit Funds and/or their designated representatives in the conduct of an audit of the books and records of defendant Navillus.

## THIRTEENTH CLAIM FOR RELIEF

75.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 74 hereof.

76.    By its terms, the Setters Agreement, *inter alia*, personally bound defendant Kevin O'Sullivan to assume all obligations of defendant Navillus.

77.    Defendant Kevin O'Sullivan is obligated, pursuant to the terms of the Setters Agreement, and the trust documents incorporated by reference therein, to permit

and cooperate in the conduct of audit of the books and records of defendant Navillus as aforesaid.

78.     Upon information and belief, defendant Kevin O'Sullivan has failed to permit and/or cooperate in the conduct of an audit of books and records of defendant Navillus.

79.     Accordingly, pursuant to the terms and conditions of the Setters Agreement, and the trust documents incorporated by reference therein, the International Benefit Funds demand an order directing defendant Kevin O'Sullivan to permit and cooperate with the International Benefit Funds and/or their designated representatives in the conduct of an audit of the books and records of defendant Navillus.

## FOURTEENTH CLAIM FOR RELIEF

80.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 79 hereof.

81.     Pursuant to the Setters Agreement and the Helpers Agreement, defendant Navillus, *inter alia*, became obligated to deduct dues checkoffs from the wages paid to the employees of defendant Navillus performing work within the trade and geographical jurisdiction of the Union who authorized such deduction in writing.

82.     Upon information and belief, pursuant to the Setters Agreement and the Helpers Agreement, and as a result of work performed by individual employees of defendant Navillus who authorized said deduction in writing, defendant Navillus deducted an unknown amount as and for dues checkoffs for the period January 1999 through the present.

83.     No part of the dues checkoffs contractually due the plaintiff Union has been remitted by defendant Navillus to plaintiff Union, and an unknown amount remains unpaid.

84.     Accordingly, defendant Navillus is liable to plaintiff Union as and for unremitted dues checkoffs in an unknown amount due for the period January 1999 through the present.

## FIFTEENTH CLAIM FOR RELIEF

85.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 84 hereof.

86.     Defendant Kevin O'Sullivan is obligated, pursuant to the Setters Agreement, to remit to plaintiff Union dues checkoffs from defendant Navillus.

87.     Upon information and belief, dues checkoffs contractually due from defendant Navillus pursuant to the Setters Agreement have not been remitted by defendant Kevin O'Sullivan to plaintiff Union, and plaintiff Union has been damaged in an unknown amount.

88.     Accordingly, defendant Kevin O'Sullivan is personally liable to plaintiff Union as and for unremitted dues checkoffs in an unknown amount for the period January 1999 through the present.

## SIXTEENTH CLAIM FOR RELIEF

89.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 88 hereof.

90.     Pursuant to the terms and conditions of the Setters Agreement, defendant Navillus is required, *inter alia*, to post and maintain a bond to guarantee payment of all

fringe benefit contributions to the plaintiff Funds and remittance of all dues checkoffs to plaintiff Union that become due and owing.

91.     Article XXV of the Setters Agreement provides in relevant part:

> Each Employer shall post and maintain a bond, letter of credit or cash equivalent to insure payment of contributions to the Fringe Benefit Funds.  The Bond shall be provided upon execution of this Agreement.  The Union may, in its absolute discretion, require an additional increase in the amount of the bond, letter of credit or cash equivalent posted by any Employer.  Bonds shall be in the following amounts, based on the average number of Tile Layers employed in the previous year:

| Number of Members of Bargaining Unit Employed | Minimum Bond |
|---|---|
| 0-1 | $2,500.00 |
| 2-4 | $10,000.00 |
| 5 or more | $20,000.00 |

92.     Upon information and belief, there were more than five members of bargaining unit employees employed by defendant Navillus in the previous year.

93.     Defendant Navillus is obligated, pursuant to the Setters Agreement, to post and maintain a bond in the amount of $20,000.00.

94.     No bond has been provided to plaintiffs Local 52 Benefit Funds and the Union by defendant Navillus, although such a bond is required pursuant to the Setters Agreement, and plaintiffs Local 52 Benefit Funds and the Union have been damaged in an amount in excess of $20,000.00.

95.     The failure, refusal or neglect of defendant Navillus to post and maintain the required bond constitutes a violation of the Setters Agreement between defendant Navillus and plaintiff Union.

96.     Accordingly, defendant Navillus is obligated to post and maintain a bond in the amount of $20,000.00.

## SEVENTEENTH CLAIM FOR RELIEF

97.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 96 hereof.

98.     Defendant Kevin O'Sullivan is obligated, pursuant to the terms of the Setters Agreement, to post and maintain a bond as aforesaid.

99.     No bond has been provided to plaintiffs Local 52 Benefit Funds and the Union by defendant Kevin O'Sullivan, although such a bond is required pursuant to the Setters Agreement.

100.    Accordingly, defendant Kevin O'Sullivan is personally obligated to post and maintain a bond for the benefit of the Local 52 Benefit Funds and the Union in the amount of $20,000.00.

## EIGHTEENTH CLAIM FOR RELIEF

101.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 100 hereof.

102.    Pursuant to the Setters Agreement, defendants Navillus and Kevin O'Sullivan are obligated, *inter alia*, to pay the costs of the audit of the books and records if defendants Navillus and Kevin O'Sullivan are found to be substantially delinquent in the payment of fringe benefit contributions to the plaintiff Local 52 Benefit Funds.

103.    Article III, Section 3(T) of the Setters Agreement provides that:

> Any Employer who is found upon regular or special audit ordered by the Trustees of the Pension, Welfare, Annuity, Promotion and/or I.U. Pension Fund to be substantially delinquent may be charged the full cost of such audit.

104.    Article III, Section 3(O) of the Setters Agreement provides that:

> Any Employer who is found upon regular or special audit
> ordered by the Trustees of the Pension, Welfare, Annuity,
> Promotion Fund and/or I.U. Pension Fund to be more than
> three (3) months delinquent in excess of $1,000.00 may be
> charged the full cost of such audit.

105.    Upon information and belief, Navillus is substantially delinquent in the payment of fringe benefit contributions to plaintiffs Local 52 Benefit Funds for the period January 1999 through the present, and is more than three months delinquent in excess of $1,000.00.

106.    As a result of defendant Navillus' substantial delinquency, pursuant to the Setters Agreement, there is due and owing to plaintiffs Local 52 Benefit Funds from defendants Navillus and Kevin O'Sullivan the cost of the audit for the period January 1999 through the present in an amount to be determined.

107.    Accordingly, defendants Navillus and Kevin O'Sullivan are liable to the plaintiffs Local 52 Benefit Funds as and for the cost of the audit for the period January 1999 through the present, plus the reasonable costs and attorneys' fees incurred in bringing this action.

## NINETEENTH CLAIM FOR RELIEF

108.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 107 hereof.

109.    Pursuant to the terms and conditions of the Setters Agreement, defendants Navillus and Kevin O'Sullivan are required to timely pay and submit fringe benefit contributions and reports to the plaintiffs Local 52 Benefit Funds, remit dues checkoffs and permit and cooperate in the conduct of audit of defendant Navillus' books and

records for so long as defendants remain obligated to do so pursuant to the Setters Agreement.

110.    Article III, Section 3 (P) of the Setters Agreement provides that:

> Where payment is made or an audit is conducted pursuant to a judgment or court order, the Employer recognizes the right of the Trustees of the Pension, Welfare, Annuity and Promotion Funds to have the court enter an order permanently enjoining the Employer and its agents, representatives, directors, officers, stockholders, successors and assigns, for the remaining term of this Agreement from failing, refusing or neglecting to submit the required employer remittance reports and/or to pay the required contributions to the Funds, and requiring the Employer to cooperate in an audit in accordance with the provisions of this Agreement.  In consideration of this Agreement the Employer represents and warrants that it will not raise any defense, counterclaim or offset to the Trustees' application for this order.

111.    Upon information and belief, defendants Navillus and Kevin O'Sullivan have failed to timely pay and submit fringe benefit contributions to plaintiffs Local 52 Benefit Funds for the period January 1999 through the present, remit dues checkoffs to the plaintiff Union for the period January 1999 through the present, failed to permit and cooperate in the conduct of an audit of defendants' books and records for the period January 1999 through the present, and are currently in breach of their obligations under the Setters Agreement.  Defendants' prior conduct demonstrates a significant likelihood that they will continue to breach the terms of the Setters Agreement.

112.    Plaintiffs have no adequate remedy at law to insure that defendants will adhere to the terms of the Setters Agreement.

113.    Plaintiffs Local 52 Benefit Funds will suffer immediate and irreparable injury unless defendants and their officers, agents, servants and employees are enjoined

from failing, refusing or neglecting to pay and/or submit the required monetary contributions and reports to plaintiffs Local 52 Benefit Funds and permit and cooperate in the conduct of audits for so long as defendants remain obligated to do so pursuant to the Setters Agreement.  Plaintiff Union will suffer immediate and irreparable injury unless defendants, their officers, agents, servants and employees are enjoined from failing, refusing or neglecting to remit dues checkoffs, for so long as they remain obligated to do so pursuant to the Setters Agreement.

114.    Accordingly, plaintiffs Local 52 Benefit Funds and the Union request that this Court issue an injunction permanently enjoining defendants, their officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from failing, refusing or neglecting to pay and/or submit the required contributions and/or reports to plaintiffs Local 52 Funds and requiring them to permit and cooperate in the conduct of audits for the term of the Setters Agreement.  Plaintiff Union requests that this Court issue an injunction permanently enjoining defendants, their officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from failing, refusing, or neglecting to deduct and remit dues checkoffs for the term of the Setters Agreement.

## TWENTIETH CLAIM FOR RELIEF

115.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 114 hereof.

116.    Upon information and belief, defendant Kevin O'Sullivan is an officer, director and principal of Navillus.  Upon further information and belief, at all relevant

times Kevin O'Sullivan was a corporate officer with operational control of Navillus and was directly responsible for Navillus' failure to pay benefit contributions to the Plaintiff Funds.  Upon information and belief, Kevin O'Sullivan was responsible for deciding whether to pay benefit contributions to Plaintiffs, and decided not to do so.

117.   Upon information and belief, Kevin O'Sullivan, in his capacity as owner, officer and/or director of Navillus withheld monies, or directed that monies be withheld from Navillus' employees' gross weekly paychecks, in accordance with the collective bargaining agreements, as vacation benefit payments owed to the Funds ("Vacation Benefit Payments").

118.   These Vacation Benefit Payments were neither received by the Funds nor, upon information and belief, ever transmitted by Navillus or Kevin O'Sullivan to the Funds.

119.   Because Vacation Benefit Payments are shown as deductions on an employee's paycheck, they are immediately assets of the Funds.

120.   Under ERISA, corporate officers that have control over plan assets, such as the Vacation Benefit Payments here, become fiduciaries over such monies.

121.   Upon information and belief, Defendant Navillus had sufficient funds to pay the benefit contributions and union dues owed to Plaintiffs, but Defendant Kevin O'Sullivan chose directed that the Vacation Benefit Payments that should have been paid to the Funds were diverted for other business purposes, namely paying other debts of Navillus.

122.   This diversion of the Vacation Benefit Payments that should have rightfully been paid to the Funds constitutes a breach of a fiduciary duty owed to the

Funds.  As such, Kevin O'Sullivan is personally liable to the Funds for the unpaid Vacation Benefit Payments.

123.    By reason of the foregoing, Kevin O'Sullivan is liable to the Funds in an unknown amount, to be determined at trial, consisting of unpaid Vacation Benefits Payments, and for additional amounts to be determined by the Court for statutory damages, reasonable attorneys' fees, interest on the unpaid principal, and costs and disbursements incurred in this action.

## TWENTY-FIRST CLAIM FOR RELIEF

124.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 123 hereof.

125.    Upon information and belief, defendant Kevin O'Sullivan is an officer, director and principal of Navillus.  Upon further information and belief, at all relevant times Kevin O'Sullivan was a corporate officer with operational control of Navillus and was directly responsible for Navillus' failure to pay benefit contributions to the Plaintiff Funds.  Upon information and belief, Kevin O'Sullivan was responsible for deciding whether to pay benefit contributions to Plaintiffs, and decided not to do so.

126.    Upon information and belief, Navillus has not fulfilled its obligations to pay and/or submit the required monetary contributions and/or reports to the Funds and remit dues checkoffs and other contributions deducted from the wages paid to employees who perform work covered by the Setters Agreement and/or the Helpers Agreement.  As such, upon information and belief, a substantial underpayment of the required monetary contributions exists.

127.   Upon information and belief, Kevin O'Sullivan fraudulently caused Navillus not to pay these amounts.

128.   Upon information and belief, these large delinquencies were incurred because Kevin O'Sullivan knowingly and willfully failed to report to Plaintiffs the amount of roofing work actually performed by Navillus' employees each month during the relevant time period.

129.   These misrepresentations were made for the purpose of deceiving the Plaintiffs, who relied upon them to their detriment.

130.   Upon information and belief, during the relevant period Navillus received payments from the entities with whom it contracted to perform tile work in amounts sufficient to pay all benefit contributions owed to the Plaintiffs.

131.   Upon information and belief, Kevin O'Sullivan knowingly and willfully directed that the monies not be paid to the Plaintiffs, and diverted those amounts elsewhere.

132.   Section 515 of ERISA requires employers to make contributions to a multiemployer plan under the terms of a collective bargaining agreement.  29 U.S.C. § 1145.

133.   By reason of the foregoing fraudulent activites, Defendant Kevin O'Sullivan is an "employer" as that term is used in Section 515 of ERISA.

134.   The Funds are "multiemployer plans" as that term is used in Section 515 of ERISA.

135.   Section 502(g) of ERISA provides that upon a finding of an employer violation of Section 515 of ERISA, the Court shall award to the plaintiff the unpaid

fringe benefit contributions, interest on the unpaid contributions, liquidated damages, and attorneys' fees and costs and disbursements incurred in the action.

136.    By reason of the foregoing, defendant Kevin O'Sullivan is personally liable to the Plaintiff Benefit Funds for fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for the period January 1999 through the present, plus interest, attorneys' fees and liquidated damages.

<u>TWENTY-SECOND CLAIM FOR RELIEF</u>

137.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 136 hereof.

138.    By issuing Bonds in connection with the Public Works Projects in which Defendant Navillus performed work, which include DeKalb Avenue Subway Station and the Staten Island Ferry terminal at Whitehall, John Doe Bonding Companies 1 through 3 assumed joint and several liability with Defendant Navillus to pay Plaintiffs any and benefits due and owing to them, which Defendant Navillus failed to pay.

139.    Defendant Navillus has willfully failed to ensure that Plaintiffs received the monies owed under the Setters Agreement and Helpers Agreement for work performed by them on the sites of the Public Works Projects in an aggregate amount not yet determined, but believed to exceed $1,000,000.

140.    Pursuant to the terms of the Bonds, and alternatively Labor Law § 220-g, John Doe Bonding Companies 1 through 3 are required to make payment to Plaintiffs and the other members of the putative class in an amount not yet determined, but believed to exceed of $1,000,000, plus interest, in an amount apportioned to each bonding company as per the terms of the applicable bonds.

WHEREFORE,

(1)      Plaintiffs Local 52 Benefit Funds demand judgment on their First Claim for Relief against Navillus as and for fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for the period January 1999 through the present, plus interest, attorneys' fees and liquidated damages thereon;

(2)      Plaintiffs Local 88 Benefit Funds demand judgment on their Second Claim for Relief against Navillus as and for fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for the period January 1999 through the present, plus interest, attorneys' fees and liquidated damages;

(3)      Plaintiffs International Benefit Funds demand judgment on their Third Claim for Relief against Navillus as and for fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for the period January 1999 through the present, plus interest at the rate of fifteen percent per annum, liquidated damages calculated at the rate of twenty percent and attorneys' fees;

(4)      Plaintiffs Local 52 Benefit Funds demand judgment on their Fourth Claim for Relief against Kevin O'Sullivan as and for fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for the period January 1999 through the present, plus interest, attorneys' fees and liquidated damages;

(5)      Plaintiffs International Benefit Funds demand judgment on their Fifth Claim for Relief against Kevin O'Sullivan as and for fringe benefit contributions in an unknown amount to be determined by a court-ordered audit for the period January 1999 through the present, plus interest at the rate of fifteen percent per annum, liquidated damages calculated at the rate of twenty percent and attorneys' fees;

(6)     Plaintiffs Local 52 Benefit Funds demand judgment on their Sixth Claim for Relief against Navillus for the payment and submission of the required monetary contributions and reports, and for the additional amount of said statutory damages, together with reasonable attorneys' fees, interest on the unpaid principal, costs and disbursements incurred in this action, pursuant to section 502 of ERISA (29 U.S.C. § 1132);

(7)     Plaintiffs Local 88 Benefit Funds demand judgment on their Seventh Claim for Relief against Navillus for the payment and submission of the required monetary contributions and reports, and for the additional amount of said statutory damages, together with reasonable attorneys' fees, interest on the unpaid principal, costs and disbursements incurred in this action, pursuant to section 502 of ERISA (29 U.S.C. § 1132);

(8)     Plaintiffs International Benefit Funds demand judgment on their Eighth Claim for Relief against Navillus for the payment and submission of the required monetary contributions and reports, and for the additional amount of said statutory damages, together with reasonable attorneys' fees, interest on the unpaid principal, costs and disbursements incurred in this action, pursuant to section 502 of ERISA (29 U.S.C. § 1132);

(9)     Plaintiffs Local 52 Benefit Funds demand on their Ninth Claim for Relief an order directing defendant Navillus to permit and cooperate with the Local 52 Benefit Funds and their designated representatives in the conduct of an audit of Navillus' books and records for the period January 1999 through the present;

(10)    Plaintiffs Local 88 Benefit Funds demand on their Tenth Claim for Relief an order directing defendant Navillus to permit and cooperate with the Local 88 Benefit Funds and their designated representatives in the conduct of an audit of Navillus' books and records for the period January 1999 through the present;

(11)    Plaintiffs International Benefit Funds demand on their Eleventh Claim for Relief an order directing defendant Navillus to permit and cooperate with the International Benefit Funds and their designated representatives in the conduct of an audit of Navillus' books and records for the period January 1999 through the present;

(12)    Plaintiffs Local 52 Benefit Funds demand on their Twelfth Claim for Relief an order directing defendant Kevin O'Sullivan to permit and cooperate with the Local 52 Benefit Funds and/or their designated representatives in the conduct of an audit of the books and records of defendant Navillus;

(13)    Plaintiffs International Benefit Funds demand on their Thirteenth Claim for Relief an order directing defendant Kevin O'Sullivan to permit and cooperate with the International Benefit Funds and/or their designated representatives in the conduct of an audit of the books and records of defendant Navillus;

(14)    Plaintiff Union demands judgment on its Fourteenth Claim for Relief against Navillus as and for unremitted dues checkoffs in an unknown amount due for the period January 1999 through the present;

(15)    Plaintiff Union demands judgment on its Fifteenth Claim for Relief against Kevin O'Sullivan as and for unremitted dues checkoffs in an unknown amount for the period January 1999 through the present;

(16)    Plaintiffs Local 52 Benefit Funds and the Union demand on their Sixteenth Claim for Relief an order directing defendant Navillus to post and maintain a bond in the amount of $20,000.00;

(17)    Plaintiffs Local 52 Benefit Funds and the Union demand on their Seventeenth Claim for Relief an order directing defendant Kevin O'Sullivan to post and maintain a bond in the amount of $20,000.00;

(18)    Plaintiffs Local 52 Benefit Funds demand judgment on their Eighteenth Claim for Relief against defendants Navillus and Kevin O'Sullivan as and for the cost of the audit for the period January 1999 through the present, plus the reasonable costs and attorneys' fees incurred in bringing this action;

(19)    Plaintiffs Local 52 Benefit Funds and the Union demand injunctive relief on their Nineteenth Claim for Relief against defendants Navillus and Kevin O'Sullivan permanently enjoining defendants, their officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from failing, refusing or neglecting to pay and/or submit the required contributions and/or reports to plaintiffs Local 52 Funds and requiring them to permit and cooperate in the conduct of audits for the term of the Setters Agreement. Plaintiff Union further demands injunctive relief permanently enjoining defendants, their officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from failing, refusing, or neglecting to deduct and remit dues checkoffs for the term of the Setters Agreement;

(20)     Plaintiff Benefit Funds demand judgment on their Twentieth Claim for Relief against defendant Kevin O'Sullivan in an unknown amount, to be determined at trial, consisting of unpaid Vacation Benefits Payments, and for additional amounts to be determined by the Court for statutory damages, reasonable attorneys' fees, interest on the unpaid principal, and costs and disbursements incurred in this action;

(21)     Plaintiff Benefit Funds demand judgment on their Twenty-First Claim for Relief against defendant Kevin O'Sullivan in an unknown amount to be determined by a court-ordered audit for the period January 1999 through the present, plus interest, attorneys' fees and liquidated damages;

(22)     Plaintiff Benefit Funds demand judgment on their Twenty-Second Claim for Relief against defendants John Doe Bonding Companies 1 through 3 in an unknown amount to be determined by a court-ordered audit, but believed to exceed of $1,000,000, plus interest, apportioned to each bonding company as per the terms of the bonds issued, plus interest and attorneys' fees; and

(23)     granting such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
         February 7, 2005

                         BARNES, IACCARINO, VIRGINIA,
                         AMBINDER & SHEPHERD, PLLC


                         By:_____
                             Charles R. Virginia (CV 8214)
                         Trinity Centre
                         111 Broadway, Suite 1403
                         New York, New York 10006
                         (212) 943-9080
                         Attorneys for Plaintiffs